May it please the Court. The dominant issue in this appeal is whether the defendant's contacts... Did you learn that your original client was deceased? She was not my client, Your Honor. I'm sorry. We had no inkling until the brief was filed, the answering brief was filed. Okay. All right. Thank you. Go ahead. So the key issue is whether the defendant's contacts with the forum satisfy the arise-out-of or relate-to aspect of the three-part test that the Ninth Circuit has established for a specific jurisdiction. And in this case, we're following the court's rejection of the proximate cause rationale in the shoot case in favor of the but-for test. And the but-for test simply requires that the forum contacts be an event without which the dispute would not arise. And that test is easily met here because there is a dispute about the ownership of specific assets that were acquired by the defendant's agent in the forum. But the alleged transfer of those assets happened in Hong Kong and Taiwan, didn't it? There really wasn't a transfer, Your Honor, as far as everything is argued by the parties. David Chung's position is that he had nothing to do with the assets, that they belonged to his mother, and that the money that was placed in trust back then was not transferred by him. Our view is that there never was a transfer, certainly not of the beneficial interest in the assets. And the other important point about that, Judge Thomas, is that when those events occurred back in Hong Kong, there was no dispute. At that point, David Chung had not articulated a claim that the assets were not accessible to Elizabeth Chung. So no dispute arose at that time. No dispute was inevitable. It was only years later when Mr. Chung repurposed his, what was then a tax scheme, that a dispute arose. So, counsel, let me just make sure I'm understanding this correctly. Is it your position, or maybe it's not, but that the Maple Family Trust, which started in 2004, is where, you know, they first started hiding these marital assets, and then from there all of the transfers come from that trust? That's right, Your Honor. The original trust was created in 2004. It was terminated. In Hong Kong, yes? Actually, it was in the Cayman Islands. Okay, Cayman Islands. Not California. Not when that trust was created, no. But that's the event that triggered everything that followed, yes? That is an event that did lead to the things that followed. But the but-for test doesn't look back to a decisive event, an original event. All that matters under the but-for test is that there's a connection between the forum context and the claim, and that's true here. The assets in dispute today did not exist back then. They were purchased in 2016, much, much later. And the dispute didn't arise until well into the dissolution proceeding, which was initiated in early 2019. Counsel, if we're trying to figure out who owns the trust, if the court is required to figure out, okay, this trust asset belongs to, and I apologize for using the first names, but since the last name is the same, this one belongs to Elizabeth, this one belongs to David, how are we to do that? Do we need to trace the trust assets back to their origin? In which case would it not be the 2004 Maple Trust? So it is necessary to trace back to the origin. But based on the trial that we just had in the dissolution proceeding, that's not a difficult task. The evidence in this case will show, as it did in that case, that it's really undisputed about the tracing. The original assets are agreed by all to relate back to those original assets. So to the 2004 Maple Trust, the assets that made up that Maple Trust? That's right. Okay. Specifically, it was $5 million. And the evidence that was presented in the dissolution trial is that everything does relate back to that. The purpose of creating the original trust, as I understand your position, was to evade taxes. That's right, Judge Rakoff. And that was known to your client as well. It was. So I'm not sure whether or not this is relevant, but certainly she has unclean hands, yes? She said, in effect, to her husband, let's hide our assets so we don't have to pay taxes. She did not, Your Honor. The evidence is that when the idea was initiated by the husband, she objected to it. She said it's not the right thing to do. She said it's not a good practical thing to do. She was not, quote, unquote, in on it at that point. She knew about it. She did. Did she have to sign any of the documents? No. She did not because, at that point, the trusts were created in the name of the husband's mother, so it had no connection. There was no activity that involved my client. She did not have to do anything, and she didn't. And she did protest. But on this question about things tracing back, that's not the determinative issue because the due process standard, the three-part test, looks to the connection to the forum and whether the claim arises out of those contacts. In this case, it isn't disputed that David Chung purchased, directed the purchase of the assets in 2016. There's no disagreement about that. There's also no disagreement that Mr. Chung was appointed investment advisor. The defendants don't appear to be in sync as to who made the appointment, but no matter how it's looked at, we have prima facie proof pointing in either direction. We say that the trust instrument gives the power to the trustee. We also note that Mr. Chung's mother made the request, asked the trustee to exercise that power. So one way or the other, there's a purposeful act by the defendant directed toward the forum in the form of the appointment of a California agent. And there really isn't a doubt about his role in causing this. So the question that's been raised is what — Counsel, do we care at all about what the mother's contacts were in California? Does that even come into play? It does because she's one of the defendants. Okay. So given that she only visited California once, she never personally conducted any business or executed any contracts or owned property in California, what do we look at for her specifically? For her specifically, we look to the letter of request by which she requested that her son David Chung be appointed investment advisor. But she didn't have the power to command his appointment. Is that correct? We say she did not, but InterTrust claims that she actually made the appointment. So there's a dispute between the parties as to what happened. We think the trust instrument gives the power to the trustee and only the trustee. InterTrust claims that it was Chung Ping Chi May, the mother, who actually made the appointment. The letter doesn't purport to do that, but the letter is still important because she was taking action to cause that appointment to be made. She was exercising the level of authority that she had, which was one of influence, to cause the appointment of David Chung as investment advisor. But that's her role as far as this goes. Now, beyond that? So assuming for the sake of argument that they're right and she had the power to do it, which I know you dispute, but wouldn't that actually cut in your favor? It would, as to her. Against us, as to InterTrust, perhaps, but most definitely in our favor as to her. That's why I think that no matter how it's looked at, we have prima facie proof that at a minimum meets the standard and has to be considered because however you look at it, there's a purposeful act by the defendant to appoint a California agent and there's a clear connection between the resulting forum contacts and the dispute. Does it make a difference that she asked and not ordered it? So I don't think it makes a difference at this point, Your Honor, but in the end, it's possible that it could. But what matters under the legal test is that she took decisive action calculated to generate activity in California. And also there's another way to look at it. Putting aside her activity in directing the appointment of Mr. Chung, she was using him as her agent. It's her son, but it's also her investment advisor. And regardless of the specifics of the actual appointment that took place, she was relying on him, a California agent, to manage the trust for her. And that's like the other cases that we cited where someone looks to an investment advisor in the forum. And by the way, another perspective on this is that both of the defendants are chargeable with the forum contacts of their agent. So putting aside the actual appointment, given the existence of the relationship, they're both chargeable under cases such as Scher in the Ninth Circuit where the agency concept is recognized. And we think that's a pretty basic idea that a principal is chargeable with the forum contacts of the agent. Did you want to reserve any time for a rebuttal? You're down to about two and a half minutes. You don't have to, but if you'd like to. I think I will, Your Honor. Okay. At this point. Okay. Great. Thank you very much. Okay. So I understand that appellees are splitting their time. I don't know which one of you wants to go first, but you can come on up. Thank you. Good morning, Your Honor. May it please the Court. My name is Daniel McKinnon. I represent Appellee Chung Young-Hyu, who is the personal representative, Chung Peng-Chee May, through a power of attorney. I respectfully urge this Court to affirm the district court's dismissal of this case for lack of jurisdiction. Let me ask you the question I asked your adversary. When did you learn of the death? It was around the time that the order dismissing the case was entered. At that point, Chung Young-Hyu was the representative. Prior to that, Chung Peng-Chee May was an 84-year-old bedridden woman with severe dementia. So this action has always been defended through a representative, Your Honor. All right. Go ahead. The district court correctly applied the law when it determined that the appellant, Elizabeth Chung's claim for declaratory relief, does not arise out of or relate to any sufficient contacts between Chee May and the State of California. That's the rule that applies to this jurisdictional question. And what it found correctly is that appellate's claim arises out of the funding of Chee May's trust in 2004. When appellant and her now estranged husband, David Chung, were living in Hong Kong. So what about the subsequent event where Chee May directs her son in California to be the investment advisor and then he carries out actions from California, yes? Except for, Your Honor, that doesn't contribute to any injury. The fact of what happened with respect to any investment in the trust corpus is not the claim that's being made in the First Amendment complaint. The claim is the mother's trust gambit. And that begins and ends in large part by what happened in 2004 while the parties were living in Hong Kong and Thailand, the funding of this trust using allegedly marital assets. Now, that's denied. But that is the allegations in the complaint. And when you look through the complaint, and I know they've argued very strongly that this is not the case, but you look through the complaint, multiple instances where the relief being sought and the allegations being made are that the appellant, Elizabeth Chung, has a right and interest in this trust corpus because it is community assets. And that kind of goes to a fundamental issue in this case, which is that, as counsel has just indicated, there's been a trial in the dissolution action that just completed. And the fundamental issue in that case, as we raised in our answering brief, is that the fundamental issue in that case is whether community assets were used to fund the mother's trust. This case and that case is bound together in the sense that if that case determines that those assets are not community assets, then where does that leave this case? And that's why the domestic relations exception comes in. That's why the abstention doctrine comes into play. But even setting that aside, back to Your Honor's question with respect to the investment, this does not involve any investment. That's not the claim. In fact, as the district court noted, he didn't stick it under his mattress, allegedly, and therefore there was some loss or there's some allegation that it was mismanaged or that it would have grown to something bigger had this marital asset not been transferred to the mother, allegedly. Rather, the allegation is that it was transferred to the mother in the amount of $5 million to fund a trust that has now grown to $30 million. So there's absolutely no injury, and I think that is what the district court, when it talked about and tried to explain, I know counsel in his brief, especially in his reply brief, raised the issue of legal basis. But that's all the court was trying to get at, is that at the end of the day, the claim arises out of this funding of the trust. And if you can't establish that the funding of the trust occurred using marital assets, you certainly cannot establish that somehow some investment made 12 years later has any relevance. The reality is whether that money had been invested in one company or a house or another company, a company in Minnesota or Nebraska or wherever, it doesn't matter. The claim would be the same, that marital assets were used to fund a trust that she is entitled to, and that's what she's seeking. And if she's not seeking that, as she's argued in her briefs, that no, I'm not seeking declaratory relief based on a finding of marital assets, then she doesn't have any standing. The court can't simply say these assets are not Chung-Pang Chi-Mes, and what do we do with it? It goes into a void. It goes into ether. It just sits out there. That's not how declaratory relief works. There needs to be some injury to the person that they can establish standing for declaratory relief. And here you don't have that standing either two different ways. It's kind of a conundrum they're into, and they kind of twist themselves into pretzel trying to figure this out, which is either you don't have standing because you're not seeking an adjudication of your own rights because you're claiming I'm a stranger to it, I'm a stranger to the trust, I have no --" I'm not seeking anything under that. Or you are seeking an adjudication as to the marital assets being community property, and therefore the domestic relations exception applies, and abstention should apply as well. Can you address your counsel on the other side's asking us to use the but-for test instead of arises out of or relates to? Well, I think the but-for test is the arise out of and relates to. I mean, that is essentially the same test. We're not – I don't think there's any confusion as to the law that applies here. The but-for is the arise out of or relates to. And in this case, it doesn't – the injury, the claim doesn't arise out of or relate for or is the but-for cause based on an investment in 10X. And mind you, this is an important fact, and I think we're kind of – we didn't get to this point. 10X is a Cayman Island company. It's not a California company. Their claim is even more removed, which is that, well, 10X, although it's a Cayman Island company, 10X owns WTI, which is a California company. Well, that's not a basis he incited. There's no law that supports that position. In fact, that would blow up specific jurisdiction. Any time a company had an ownership interest in another company in another State, regardless of the claim, they would be subjected to jurisdiction in that State. Thank you very much. Thank you, Your Honors. Appreciate it. Okay. Mr. Evans. Good morning, Your Honors. May it please the Court, I'm Terrence J. Evans from Duane Morris, and I'm here on behalf of Defendant Appellee Intertrust Bahamas Limited. As we expressed in our answering brief, this is a case that should not be in federal court. As acknowledged by counsel for the plaintiff appellant, Elizabeth was aware of the existence of this trust back in 2004, and she waited approximately 18 years to file the federal action while in the midst of intense litigation and facing trial in the dissolution action. Here, we have a situation where she was aware that there was this so-called trust gambit. She now wants to benefit from this trust gambit where there was a $5 million investment that now has generated more than $30 million. This was a trust that initiated while they were living in Hong Kong and the mother-in-law was living in Taiwan. It involved an investment in a Cayman Islands company. Later, the assets were moved to the Bahamas where our client does business. It's been undisputed throughout this entire litigation that Intertrust Bahamas is a Bahamas-based company that has never done business in California, has never had employees in California, has never had an address, has never had a telephone in California, has never done any work whatsoever. The plaintiff requested that there be jurisdictional discovery after the district court properly granted our motion to dismiss the initial complaint. There was extensive discovery where the plaintiff tried to find some basis to support jurisdiction. There was a deposition of the person most knowledgeable of Intertrust Bahamas. There was extensive document production. And throughout that whole process, the plaintiff was never able to find anything to support jurisdictional discovery. And this is confirmed in the First Amendment complaint. There is not one citation to any deposition testimony, any discovery response, any document that was produced during discovery that would support jurisdiction in this case. So we're asking that the court affirm the decision by the district court in favor of There were no meaningful contacts whatsoever that would justify jurisdiction in this matter. There are also additional So if at least part of the claim is that the appointment of David, I guess is his name, the son anyway, or maybe, whatever, whoever the son is, to run the investment and give investment advice in California was the event that created jurisdiction. Now, counsel for the co-defendant says that's all irrelevant. But I thought I heard plaintiff's counsel say that your position was that that was a proper appointment. Yes, and the district court found that it wasn't InterTrust Bahamas that made the decision to appoint. It was simply granting the request of the settler of the trust. But more importantly, the court found that the alleged injury that Ms. Elizabeth Chung is claiming didn't arise out of that transaction. You really have to trace it back to the very beginning, the establishment of the trust in 2004, when the Chung's were living in Hong Kong and the mother-in-law was living in Taiwan. You have to trace it back to that moment. Right. So that was going to be my question. Does it matter one way or another for purposes of this appeal? I agree completely, Your Honor. It doesn't matter because that is not the origination of the injury. I also wanted to point out that several of the cases that were cited in the reply brief by Elizabeth Chung are factually distinguishable. None of them are directly on point, and I just wanted to make a few examples. The Bostic case, which is something that is repeated throughout the reply brief, that is an employment case having to do with sexual orientation discrimination. It's factually distinguishable. It has absolutely nothing to do with the issue that we're dealing with in this case. Also, the Ford Motor Company v. Montana 8th Judicial District Court case, that's a products liability case involving the Ford Motor Company where they sold product in the forum state where there was an issue about whether or not they had sufficient contacts. None of that is applicable to what we're dealing with here. We're dealing with a trust company that is based in the Bahamas that has no meaningful contacts whatsoever in California. The district court specifically said that there was nothing that InterTrust Bahamas did to purposely avail themselves of any business opportunities in California. All of the other cases— Well, you're right that Ford is a very different case, but the principle in Ford, is it not, is that jurisdiction will lie, personal jurisdiction, if either plaintiff's claim arises out of the underlying vets that are the subject of the claim, or relates to, and I think the court said that the reason they added relates to, is that it doesn't require a causal showing. So even though Ford on its facts is very different, isn't that then an extension beyond the but-for, the normal understanding of but-for, that it doesn't have to be a causal showing, there just has to be some sort of close relationship. Now you're saying it's not a close relationship, and that may be correct, but I just want to make sure you agree with me that it doesn't have to be a causal showing, at least under Ford. Agree with that, and as it relates to the first part of that analysis, it's our position, and it was the position of the district court, that the alleged injury for Ms. Chung did not arise out of any sort of contact that occurred in California. It really relates back to the original investment in 2004 when they were in Hong Kong. And then for the second part, again, there were no significant, meaningful contacts, at least as it relates to the defendants here. All right. I want to reserve time. Are there any other questions that the panel has? Well, you don't have any, you won't have any rebuttal time, but you have 13, 12 seconds, if you want to say anything else to us. Just to wrap up here, we believe that the district court's decision was accurate and should be affirmed, and we appreciate the court's consideration. Thank you. Thank you. Just a few points. First of all, Judge Rakoff is absolutely correct. Ford does stand for the idea that arise out of and relate to are alternatives, and that the relate to alternative is not causal. That's a point the Ninth Circuit made in Yamashita, and that's a. . . Yeah, but it doesn't mean that relate to is any old connection whatsoever. In Ford, it was a very close, full relationship. Nothing like what is your alleging here. Well, it's different, but the real point is the one you made, Your Honor, that relates to is not causal. And in this case, the relate to test is satisfied because the dispute involves the purchase of the assets. And by the way, this is. . . But isn't the point, as I gather from your answers, is you are not claiming that the assets were mismanaged in California through the advice of the sun or whatever. Your claim is this was always common property of the husband and wife, and it should never have been put into the trust in the first place. And that's where your claim arises, yes? Well, that is what our claim is, but from the legal perspective, the dispute that we have, this goes to the heart of what the due process inquiry is. We look to see whether the defendant has a connection to the forum. That's clearly true here through the appointment of the agent. Then the question is, does the dispute arise out of or relate to that connection? It clearly does because the assets were purchased at the direction of the California agent. And that's what the dispute is. My friend Mr. Evans was speaking of an injury taking place at some other point. There was no injury until the scheme was repurposed, and that didn't happen in 2004. There was no dispute about the ownership of the 10X shares until they were purchased, and that didn't happen until 2016. So these events that actually create the dispute occurred long after 2004, and there's no doubt the evidence of what happened in 2004 is of important evidentiary value. But that's not the test. The test is not whether there are events other than those out of which the claim arises that are of evidentiary value. That's just not the test, and that's all they're pointing to. You're over time, so why don't you just take another 30 seconds and finish up. All they're pointing to is evidence. The evidence is important, but it's not determinative. For due process purposes, we look for a connection. We have that. Once there's a connection, we look for the relationship, and we have that as well because the agent directed the purchase of the assets that are in dispute. Thank you. Thank you. We thank each of you for your very helpful presentations this morning. This case is submitted, and we are adjourned for this session. Thank you.
judges: THOMAS, ALBA, Rakoff